**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

IN RE:

DWAN AKOI RILEY,

      Debtor

No. 24-21515
CHAPTER 11
(Judge Latta)

---

**AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**
of Dwan Akoi Riley
December 26, 2024

Submitted by Dwan Akoi Riley

---

Debtor Dwan Akoi Riley (the "Debtor"), by and through counsel, pursuant to 11 U.S.C. § 1189 and Fed. R. Bankr. P. 3016, submits this Amended[1] Plan of Reorganization under Title 11, Chapter 11, Subchapter V, of the Bankruptcy Code ("Plan").

**I.      BACKGROUND**

    A.      <u>Description and History of the Debtors' Business</u>.

The Debtor filed her Voluntary Petition (the "Petition") under Chapter 13 of the Bankruptcy Code on April 1, 2024 (the "Petition Date").  By order entered July 25, 2024 [Doc. 86], the case was converted to a case under Chapter 11.  The order included the Debtor's designation of the case to be under Subchapter V of Chapter 11., 11 U.S.C. § 1181, *et seq.* [2]

---

[1] The initial Subchapter V Plan of Reorganization is amended to add ¶ 4.03 and revise ¶ 7.02.

[2] Citations to Chapter 11 of Title 11 of the United States Bankruptcy Code are hereinafter referenced only by the section number of Title 11 (e.g., § 1189).

### *The Debtor's Business Activities*

The Debtor's primary business is managing and operating a day care center doing business as Rainbow Kidz ("Rainbow Kidz"), of which the Debtor owns along with her mother and sister. Rainbow Kidz has been in operation since the Debtor's mother started the business in 1993. Rainbow Kidz serves the lower-income, less-privileged population in Memphis, providing caring supervision for children so that their parents can earn an income to afford to care for them.  In addition to supervising the children, Rainbow Kidz provides educational services and social and emotional support.

The Debtor's share of the profits of Rainbow Kidz and her operational control increased over the years as she became more involved in the business, and she eventually took over the "reins" of the business from her mother approximately 10-12 years ago to allow her mother to ease into less involvement and to afford her more time for other activities.  As of the Petition date, the Debtor has operational control over Rainbow Kidz and receives a majority share of the profits. Rainbow Kidz will ensure sufficient funds are received by the Debtor to pay her monthly living expenses and make the payments under this Plan.

Aside from Rainbow Kidz, the Debtor also owns 100% of the membership interest in and operates MBP Records, LLC, a business which does recording and production of music videos and other media.   Prior to the Petition Date, the Debtor operated a third business, SJK Development, LLC.  SJK Development, LLC ceased operations prior to the Petition Date.

### *Debtor's Financial Difficulties & Cause of Bankruptcy*

Beginning about 10 years prior to the Petition Date and continuing up to the Petition Date, the Debtor determined to expand the capacity of Rainbow Kidz and the services it could offer and worked toward opening a similar type of business that could offer special services to parents and

children that were in short supply in her community. During this period, the Debtor started a couple other businesses as well, including production of music videos and other media, and a business that provided the use of luxury vehicles for VIP persons visiting the Memphis area and that made such vehicles available to individuals and businesses who desired or needed such vehicles for different purposes, such as using them in advertisements, videos and other media, and events and special occasions.

While the Debtor's motivation and intentions were positive, in retrospect, she endeavored to accomplish too much in too short a period of time, and without the necessary and proper resources. Ultimately, the Debtor did not have the capital and the sources of funding that she thought she had or thought she would be able to acquire. Moreover, due to expense and sometimes not recognizing the need, the Debtor did not have available the legal, financial, and business advice that would have suggested a better informed, planned, and sustained growth to meet her long-term goals

The Debtor's resources became strained. During this period, largely between 2015 and 2020, the Debtor made certain financial decisions and business decisions that in retrospect ended up being poor ones. For example, the Debtor sought capital from merchant cash advance sources and "hard money" lenders to grow and eventually to meet demands on her capital and income. Even when a borrower in good faith intends to repay and thinks he or she can repay such loans, the interest and fees associated with this type of lending far exceeds what the borrower expected and often renders repayment impossible, as was the situation with the Debtor. The loans from World Business Lenders ("WBL"), Strategic Funding, and others crippled the Debtor financially. Indeed, it was a foreclosure and other actions by WBL that were the catalyst to the Debtor's bankruptcy filing.

The Debtor, her mother, and her sister did not and do not have a formal agreement concerning the sharing of profits or concerning receipts of income and disbursements of expenses generally.  Rather, as a family business, the parties have operated Rainbow Kidz based upon mutual cooperation and trust, fairness to each other, and the desire to have an income source for the family.  The result is that the parties' ownership interests, roles, and responsibilities have been ill-defined.

Rainbow Kidz has historically utilized one or more combined bank accounts for funding sources, and then the expenses of the business are paid by one of the parties by either credit card, cash, or funds transfer and reimbursed by the Rainbow Kidz business.  By way of example, if a utility bill needed to be paid, one of the parties might pay it and then get reimbursed from the Rainbow Kidz business.  It has been mostly sufficient for them throughout the existence of Rainbow Kidz, in that it is close family members who have a high level of trust, similar motivations and goals with respect to the business, and have no desire to harm the others in the business financially or otherwise.  However, it has rendered it more difficult for the parties to make well-informed business decisions, to keep financial information in a format that can be reviewed and considered in making future business decisions, and to formulate and maintain a budget.  The same was true post-petition until about October, after the Debtor was better able to focus on her reorganization, when the Debtor began using a single account, the requisite debtor-in-possession ("DIP") account.

### Obstacles in the Case

An important factor in the progression of this case and touching upon every area of the case has been the Debtor's health and the health of a newborn child.  Throughout the entire course of this case, the Debtor has had substantial health issues arising out of a complicated, high-risk

pregnancy.  At or near the same time as the case was converted to a case under Chapter 11, the Debor suffered serious complications from her pregnancy, which required hospitalization and medical treatment, and often debilitated her.  Her child, born in early August, right as the case was converted, had critical, life-threatening health issues.  As a result, the Debtor has not been fully available, physically and mentally, to focus on the challenges that come with a Chapter 11 reorganization.

For most of August and September, the Debtor was unable to manage and direct the operations of the business, as she had to recuperate and to take care of a child with serious needs. The Debtor was for these reasons delayed in her efforts to better organize the business, isolate accounts, and then make her plans based on her direct and actual income and expenses.  Had Rainbow Kidz been operated by a corporation or LLC, it certainly would have been a much more straightforward process, but it is a family business and has been run in a way that is consistent with any such businesses.

     B.    <u>Liquidation Analysis</u>.

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as they would receive in a chapter 7 liquidation.  § 1129(a)(7)(A)(ii), applicable to Subchapter V cases under § 1191(a).  A Subchapter V plan must include such a liquidation analysis.  § 1190(1)(B).  The liquidation analysis required by § 1190(1)(B) is attached hereto as **<u>Exhibit 1</u>** and incorporated herein, along with all attachments.

The Debtor has minimal assets.  She owns a building at 4702 Cottonwood Road, Memphis, TN 38118, out of which Rainbow Kidz operates its daycare.  The Debtor initially scheduled the property at $540,000, based solely on the Shelby County tax appraisal.  The tax appraisal is extremely high, and it helps to generate revenue for Shelby County.  The property is worth

substantial less than that number.   The Debtor believe the property to be worth no more than $200,000.   This value is borne out by online sites which value property.   Counsel found only two sites out of eight tried.   Six of the sites either did not recognize the address or did not provide a value, which can be explained by the fact that the property is not a typical single-family home valued by those sites.   The two values that were obtained were $150,000 (Modern Memphis) and $160,157 (PennyMac).   The prints from these sites are attached hereto as **Exhibit 2**.   The building sits in a lower income, depressed area of Memphis.

The other assets owned by the Debtor are vehicles.   The Debtor owns a 2019 Lamborghini Urus and a 2021 Cadillac Escalade which both have negative equity.   The Cadillac is driven by workers at Rainbow Kidz for the business of Rainbow Kidz and by the Debtor.   The Urus is the Debtor's primary means of transportation, and it is used with her recording business for travel, videos, photoshoots, and other business activities.   The Debtor owns a 2016 Mercedes AMG65 that is worth, in the Debtor's estimate, about $60,000.   The Mercedes secures a debt in the amount of $43,040, leaving $16,960 in equity.   The Mercedes is driven by the Debtor's mother, is used by the Debtor's mother for personal use, to assist the Debtor with the transportation of her 4 children, and in the business of Rainbow Kidz.   The payment for this vehicle will be made to the Debtor by Rainbow Kidz.   The Debtor anticipates amending her exemptions to exempt a portion of the equity between $5,000 and $6,000, leaving about $10,000 in this unliquidated, nonexempt personal property asset.   As of the date of the filing of this Plan, the Debtor holds $17,728 in her bank accounts and has around $200 in cash.

As reflected in the Liquidation Analysis, **Exhibit 1** hereto, in a hypothetical Chapter 7 case, there would be no distribution to unsecured creditors.   There is only the partially exempted caseh

and the Debtor's 2016 Mercedes that are not fully encumbered.  The value in the Mercedes and the cash would quickly be used up by administrative expenses.

As explained above, the real property at 4702 Cottonwood Road is, in the opinion of the Debtor, supported by online quick appraisal analysis, worth no more than $200,000.  WBL has a consensual lien on the property.  WBL filed a proof of claim in the amount of $3,391,874.14, with a value stated to be $500,000.  The original loan amount was $300,000 in 2015, illustrating that the loan is usurious and otherwise invalid.  There is a recorded deed of trust, but as to the underlying debt, the Debtor opines that it is unenforceable under the applicable limitations period.  For the purposes of this Plan, subject to amendment, the Debtor proposes, preserving any claims she might have against WBL arising out of the loan and without waiving any defenses, $200,000 in payment of the lien.  The property tax claims of Shelby County and the City of Memphis, as filed, total $127,957, which would be ahead of any unsecured claims.

The Debtor proposes an approximate 15% dividend to unsecured creditors in the Plan, while a Chapter 7 case would result in no dividend to unsecured creditors.  The unsecured creditors are receiving more under this Plan than they would receive in a Chapter 7 case, and the "best interests" test is satisfied.  Accordingly, this Plan complies with § 1129(a)(7).

C.    <u>Ability to Make Future Plan Payments and Operate Without Further Reorganization</u>.

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business, and the Plan must provide projections that support the Debtor's ability to make all payments required by the Plan. § 1190(1)(c).  The Debtor suggests that while presenting the financial information in this case has been difficult due to the method by which Rainbow Kidz and the Debtor have historically paid expenses and otherwise retained information and records, see *supra*, which is not uncommon with debtors in

bankruptcy cases, the Debtor has consistent, dependable income, and the operating expenses of Rainbow Kidz and monthly expenses of the Debtor reflect that there will be sufficient funds available to fund the Plan.

Over the past weeks, the Debtor has spent significant time and effort gathering the amounts of customary expenses, analyzing the expenses of the business and herself, and evaluating the disposable income that will be available to her after payment of such expenses, to in turn develop a repayment plan that provides the best outcome for her creditors while at the same time allows for the maintenance and ultimate growth of a business that is necessary for the community.  The operating reports reflect the income and expense of Rainbow Kidz without the Debtor's anticipated budget in place and before the Debtor could develop and institute changes to free up profit to be directed to her, with the consent and blessing of her mother and sister.

The Debtor, after consultation with her mother and sister and evaluation of the ordinary income and expenses of Rainbow Kidz and her personal expenses and income needs, has developed an income and expense strategy she can comply with and that allows for the payments required under this plan.  The income of Rainbow Kids comes almost exclusively from the low-income voucher program of the State of Tennessee.  The State is a solvent source that provides a consistent income the business can depend upon, and it justifies the feasibility of this Plan absent better historical financial information.  Attached hereto as **Exhibit 3** are "Provider Remittances" from September and October 2024, which are examples that illustrate the typical monthly income of Rainbow Kidz.  The typical monthly operating expense of Rainbow Kidz is attached hereto as **Exhibit 4**.

Since October, the Debtor has evaluated her assets and debts, and her income and expenses. She has lowered her debt burden by several thousand dollars through the surrender of two costly

vehicles.  The  Debtor has prepared a budget based upon the income consistently received by Rainbow Kidz.  As stated, the income to the Debtor derives from a consistent and solvent source that can be relied upon by Rainbow Kidz and the Debtor.  Indeed, it is the steadiness of the income and the solvency of the source that typically triggers feasibility issues.  The expenses of Rainbow Kidz are in substantial part fixed.  The Debtor's budget, which is her projection of her reasonable living expenses against the income agreed to by Rainbow Kidz, as justified by Rainbow Kidz' budget, is attached hereto as **Exhibit 5**.

The Debtor has consulted with her counsel concerning her rights and responsibilities as a Chapter 11 debtor and the necessity of utilizing the debtor-in-possession bank account, proper record-keeping, accurate reporting, and compliance with her budget.  The Debtor believes that based on the profit to be generated by Rainbow Kidz, supplemented by her income from MBP Recording, the Plan is feasible.

This Plan proposes payments over a 59-month period.  There are no events or expectations suggesting that the income of Rainbow Kidz or, accordingly, the income of the Debtor, will decrease or that the expenses of Rainbow Kidz or the Debtor will increase above cost of living.  It is especially true considering that the source of the Debtors' income comes in considerable part from the State.

**The effective date of the Plan (the "Effective Date") is the 15th day of the month immediately following the month in which an order confirming the Plan has been entered on the docket.  The final Plan payment is expected to be paid on the first day of the 59th month after the Effective Date.**

## II.    THE PLAN

### Article 1:  Summary.

This Plan proposes to pay the creditors of the Debtor from the future income of the Debtor. The projected income and expenses of the Debtor and her business are reflected in **Exhibits 3-5**.

The Plan provides for the payment of administrative expenses, priority tax claims, five classes of secured claims, and three classes of non-priority unsecured claims.  Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 15 cents on the dollar.

> All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.
>
> **YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY (IF YOU DO NOT HAVE AN ATTORNEY, YOU ARE ENCOURAGED TO CONSULT WITH ONE).**

### Article 2:  Classification of Claims and Interests.

2.01:  <u>Class 1</u>.  The claim of *WBL SPO II, LLC* ("WBL") secured by the first-position lien on the Debtor's real property located at 4702 Cottonwood Road, Memphis, TN 38118 (Claim No. 23), to the extent allowed as a secured claim under § 506 of the Code.

2.02:  <u>Class 2</u>.  The claim of *Mercedes-Benz*, secured by a first-position lien on the Debtor's 2016 Mercedes AMG65 (Claim No. 18), to the extent allowed as a secured claim under § 506 of the Code.

2.03:  <u>Class 3</u>.  The claim of *Veros Credit*, secured by the first-position lien on the Debtor's 2019 Lamborghini Urus (Claim No. 19), to the extent allowed as a secured claim under § 506 of the Code.

2.04:  <u>Class 4</u>.  The claim of *AmeriCredit Financial Services, Inc.*, secured by the first-position lien on the Debtor's 2021 Cadillac Escalade (Claim No. 3), to the extent allowed as a secured claim under § 506 of the Code.

2.05:  <u>Class 5</u>.  Claim Nos. 12 and 35 of *Shelby County* and Claim Nos. 13 and 36 of the *City of Memphis*, to the extent allowed as a secured claim under § 506 of the Code.

2.06:  <u>Class 6</u>.  Claim Nos. 31 and 32 of *Midway c/o Westlake Portfolio Management*, being anticipated deficiencies arising out of leased vehicles.

2.07:  <u>Class 7</u>.  Claim No. 9 of *Wilmington Savings Bank*, Claim No. 24 of *Atlas Acquisitions*, and Claim No. 30 of *Strategic Funding Source, Inc.*

2.08:  <u>Class 8</u>.  The claims of *Non-Priority Unsecured Creditors*, whether filed or scheduled.  For claims that are both filed and scheduled, the filed claims supersede the scheduled debt.

### *Article 3:  Treatment of Administrative Expenses, Priority Claims, including Priority Tax Claims, and Court Fees.*

3.01:  <u>Unclassified Claims</u>.  Under § 1123(a)(1)

3.02:  <u>Administrative Expenses</u>.  The administrative expenses are to be paid as follows:

(a)  *Compensation and Reimbursement of Expenses of Counsel for the Debtor*. Compensation and reimbursement of expenses of counsel for the Debtor are by agreement of the undersigned payable over time and not demanded to be paid on the Effective Date, except to the extent that the Court approves the post-petition retainer requested by counsel for the Debtor. Confirmation of this Plan will authorize the payment of compensation to counsel and reimbursement of expenses, and will be paid from any additional profit of Rainbow Kidz above the amount payable on a monthly basis to the Debtor from such profits or from the Debtor's mother.  Neither of these sources have interests that conflict with those of the Debtor.  Indeed, the

effective reorganization of the Debtor is critical to the financial success of each.    Any compensation or reimbursement of expenses are subject to proper application before the Court and approval by the Court.

(b) *Compensation and Reimbursement of Expenses of the Subchapter V Trustee.*  The Court entered an order requiring the Debtor to escrow $1,000/month to cover the compensation and reimbursement of expenses of the Subchapter V Trustee, and those funds will be utilized to pay the Subchapter V Trustee.  If the funds in escrow are not sufficient to cover the fees and expenses of the Subchapter V Trustee, the funding of the escrow will continue until such time as the fees and expenses are paid in full or until the amount on deposit is at a minimum $3,000.  If the Court has approved compensation and reimbursement of expenses of the Subchapter V that have not been paid, the Subchapter V Trustee is authorized to immediately pay over from new deposits a sufficient amount to cover unpaid compensation and reimbursement of expenses until they are paid in full.

3.03:  Priority Tax Claim of the Internal Revenue.

(a) The *Internal Revenue Service* (the "*IRS*") filed a proof of claim in the total amount of $270,965.43, of which $41,453.57 is designated as priority. The deadline for governmental entities to file a proof of claim is January 21, 2025.  The Debtor does not anticipate that any additional claims of governmental units will be filed in the case.

(b) Consistent with the requirements set forth in § 1129(a)(9)(C), the *IRS* will be paid in full in 59 monthly installments of $4702.62, beginning the first day of the first month following the Effective Date, and the first day of each month thereafter, followed by a 59th and final payment in the amount of $702.62.

(c) This Section 3.03 shall not be deemed an admission by the Debtor of her ultimate liability and shall not constitute a waiver of the Debtors' right to object to or otherwise contest any claim filed by the *IRS*. The Debtors anticipate filing a claim on behalf of the *IRS* in the event the IRS does not file a proof of claim on or before January 28, 2025.

3.04: <u>Statutory fees</u>. All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date will be paid on or before the Effective Date.

### *Article 4: Treatment of Claims and Interests Under the Plan.*

4.01: <u>Claims and Interests are Treated as Follows under this Plan</u>. The claims of creditors described in Articles 2 and 3 hereinabove constitute all the debt of all creditors of the Debtor.

(a) The Debtor's identification of a claim or debt in this Plan or statement of the amount of any claim or debt in this Plan (1) shall not operate as an admission by the Debtors as to the validity, liability, or amount of any such claim or debt, and (2) shall not constitute a waiver by the Debtors of any right to object to or otherwise contest the validity, liability, or amount of any such claim or debt, except as strictly set forth hereinbelow in Article 5 of this Plan.

(b) The Debtor's identification of a claim or debt in this Plan as "secured" (1) shall not operate as an admission by the Debtors as to the nature, validity, or extent of any liens, including whether any such liens were properly perfected as of the Petition Date, and (2) shall not constitute a waiver by the Debtors of any right to object to or otherwise contest the nature, validity, or extent of any liens, including whether the liens were perfected as of the Petition Date and whether such liens are void, voidable or avoidable, except as strictly set forth hereinbelow in Article 5 of this Plan.

(c) The Debtor's identification of a claim or debt in this Plan as "priority" (1) shall not operate as an admission by the Debtors as to the priority of any claim or debt or the extent to which

any claim or debt is entitled to priority, and (2) shall not constitute a waiver by the Debtors of any

right to object to or otherwise contest the priority of any claim or debt or the extent to which any

claim or debt is entitled to priority, except as strictly set forth hereinbelow in Article 5 of this Plan.

4.02:  Claims and Interests are Treated as Follows under this Plan.

| Class | Impairment | Treatment |
|---|---|---|
|  |  |  |
| CLASS 1<br><br>Allowed Secured Claim of **WBL SBO, II, LLC**, as identified in ¶ **2.01**, *infra*. | **Impaired** | Claim No. 23 of **WBL SBO, II, LLC** ("WBL"), in the amount of $3,391,874.14, secured by a first-position lien on the Debtor's real property located at 4702 Cottonwood Road, Memphis, TN 38118, is treated as follows:<br><br>The Debtor will pay over the life of the plan the value of the property, which shall not be an amount greater than $200,000, and **ALL OTHER DEBT OWED BY THE DEBTOR TO WBL IS DISCHARGED WITHOUT PAYMENT UPON ENTRY OF THE GENERAL DISCHARGE IN THIS CASE**, as the debt is unenforceable as a result of the expiration of the limitations period for bringing actions to enforce such debts, and the interest and fees are usurious.<br><br>**The Debtor will pay $200,000 to WBL in full at 5.00% interest in 59 monthly installments of $3,922.78**, beginning on the first day of the first month following the Effective Date and the first day of the month for each month thereafter, and a final payment in the 60th month for any remaining balance up to $3,922.78.00 but not more.  In no event shall the total amount paid with interest exceed $231,445.00.<br><br>After the 60th monthly payment, if required, is made under the terms and conditions stated herein, the  Debtor shall be deemed to have paid the debt in full, and WBL SHALL RELEASE THE DEED OF TRUST AND ANY OTHER LIENS RELATED TO THIS DEBT. |

| CLASS 2 <br><br> <u>Allowed Secured Claim</u> of **Mercedes-Benz Financial Services USA, LLC**, as identified in ¶ 2.02, *supra*. | **Impaired** | <u>Claim No. 18</u> of **Mercedes-Benz Financial Services USA, LLC**, in the amount of $43,039.58, secured by a first-position lien on the Debtor's 2016 Mercedes G65W4, is treated as follows: <br><br> **THE DEBTORS WILL PAY THE CLAIM IN FULL AT $43,040 AT 10.00% INTEREST IN 59 MONTHLY INSTALLMENTS OF $926.44**, beginning on the first day of the first month following the Effective Date.  In no event shall the total amount paid as secured exceed $54,660.00. <br><br> After the 59th monthly payment is made  under the terms and conditions stated herein, MERCEDES-BENZ FINANCIAL SERVICES SHALL RELEASE ITS LIEN ON THE 2016 MERCEDES G65W4. |
| CLASS 3 <br><br> <u>Allowed Secured Claim</u> of **Veros Credit**, as identified in ¶ 2.03, *supra*. | **Impaired** | <u>Claim No. 19</u> of **Veros Credit**, in the amount of $184,583.95, secured by a first-position lien  on the Debtor's 2019 Lamborghini Urus, is treated as follows: <br><br> THE DEBTORS WILL PAY $184,000 AT 10.00% INTEREST IN 59 MONTHLY INSTALLMENTS OF $3,960.60, beginning on the first day of the first month following the Effective Date.  In no event shall the total amount paid as secured exceed $233,676.00. <br><br> After the 59th monthly payment is made  under the terms and conditions stated herein, VEROS CREDIT SHALL RELEASE ITS LIEN ON THE 2019 LAMBORGHINI URUS. |

| | | |
|---|---|---|
| **CLASS 4**<br><br>Secured Claim of **AmeriCredit Financial Services, Inc.**, as identified in ¶ 2.04, *supra* | **Impaired** | Claim No. 3 of **AmeriCredit Financial Services, Inc.**, in the amount of $97,954.35, secured by a first-position lien on the Debtor's 2021 Cadillac Escalade, is treated as follows:<br><br>THE DEBTORS WILL PAY $65,000 AT 10.00% INTEREST IN 59 MONTHLY INSTALLMENTS OF $1,399.13, beginning on the first day of the first month following the Effective Date.  In no event shall the total amount paid as secured exceed $82,549.00.<br><br>After the 59th monthly payment is made  under the terms and conditions stated herein, AMERICREDIT FINANCIAL SERVICES SHALL RELEASE ITS LIEN ON THE 2021 CADILLAC ESCALADE. |
| **CLASS 5**<br><br>Secured Claims of **Shelby County** and the **City of Memphis**, as identified in ¶ 2.05, *supra*. | **Impaired** | Claim Nos. 12 and 35 of **Shelby County**, in the aggregate amount of $37,321.16, secured by a statutory lien on the Debtor's real property located at 4702 Cottonwood Road, Memphis, TN 38118, is treated as follows:<br><br>THE DEBTORS WILL PAY $37,321.16 AT 18.00% INTEREST IN 59 MONTHLY INSTALLMENTS OF $957.67, beginning on the first day of the first month following the Effective Date.  In no event shall the total amount paid as secured exceed $56,504.00.<br><br>**After the 59th monthly payment is made under the terms and conditions stated herein, the Debtor shall be deemed paid for any tax year 2023 or earlier.**<br><br>_____ |

| | | |
|---|---|---|
| | | Claim Nos. 13 and 36 of the **City of Memphis**, in the aggregate amount of $88,879.83, secured by a statutory lien on the Debtor's real property located at 4702 Cottonwood Road, Memphis, TN 38118, is treated as follows:<br><br>THE DEBTORS WILL PAY $88,879.83 AT 18.00% INTEREST IN 59 MONTHLY INSTALLMENTS OF $2,280.73, beginning on the first day of the first month following the Effective Date.  In no event shall the total amount paid as secured exceed $134,561.00.<br><br>**After the 59th monthly payment is made under the terms and conditions stated herein, the Debtor shall be deemed paid for any tax year 2023 or earlier.** |
| CLASS 6<br><br>Prepetition Arrearage and Postpetition Rejection Claims of **Midway c/o Westlake Portfolio Management**, as identified in ¶ 2.06, *supra*. | **Impaired** | Claim Nos. 31 and 32 of **Midway c/o Westlake Portfolio Management** ("Midway") are lease claims filed as if the claims were secured claims. The automatic stay has been lifted as to vehicles which are the subject of the leases.<br><br>**On or before the 60th day immediately after the Effective Date**, Midway must file any claim it may have against the Debtor for prepetition past-due lease payments and postpetition rejection damages of any kind, including, but not limited to, vehicle damage, unpaid postpetition lease payments, and lease payments that could have been earned had the lease been paid through the term date, or amend the existing claims, supported by the proof required by the Federal Rules of Bankruptcy Procedure.<br><br>Any amended claim amount or new claim amount will receive the same treatment as creditors who have a **Class 8 Non-Priority General Unsecured Claim**.<br><br>FAILURE TO AMEND EXISTING CLAIMS OR, ALTERNATIVELY, TO FILE NEW CLAIMS ON OR BEFORE THE 60TH DAY IMMEDIATELY FOLLOWING THE EFFECTIVE DATE BARS MIDWAY FROM RECOVERING ANY CLAIMS DESCRIBED IN THIS CLASS 6 TREATMENT. |

| CLASS 7 | Impaired | <u>Claim No. 9</u> of **Wilmington Savings Bank**, <u>Claim No. 24</u> of **Atlas Acquisitions**, and <u>Claim No. 30</u> of **Strategic Funding Source, Inc.**, all filed as non-priority general unsecured claims, are UNENFORCEABLE due to expiration of the relevant limitations periods.  **These claims are discharged by the general discharge entered in this case with no payment.**<br><br>Nothing in this Plan or any other document filed, referenced, or referred to in this case shall be deemed an admission of the debt. |
|---|---|---|
| Claims of **Wilmington Savings Bank**, **Atlas Acquisitions**, and **Strategic Funding Source, Inc.** as identified in ¶ 2.07, *supra*. | | |
| CLASS 8<br><br>**Non-Priority Unsecured Claims**, as identified in ¶ 2.08, *supra*. | Impaired | <u>All creditors</u> who have filed proofs of claims **that are** not treated in Classes 1-7, **are deemed NON-PRIORITY UNSECURED CREDITORS**.<br><br>**Creditors who were listed in the statements and schedules accompanying the Debtor's petition, whether initial statements and schedules or conversion or amended statements and schedules, and whether filed in the Chapter 13 case or the Chapter 11 case, are** deemed non-priority unsecured creditor**s.**<br><br>The Debtor calculates the total to be $452,044.82 in non-priority general unsecured debt.  This total excludes any post-confirmation claim that may be made by Class 6 Claimants (limited to a maximum of $90,000), but it includes the non-priority portion of the claim of the Internal Revenue Service<br><br>**UNSECURED CREDITORS SHALL RECEIVE A *PRO RATA* SHARE** (ACCORDING TO AMOUNT OF TOTAL CLAIM) **OF 10 SEMI-ANNUAL INSTALLMENTS OF** $9,000.<br><br>**The first payment will be exactly 6 months from the Effective Date, and subsequent payments will be on a date exactly 6 months subsequent to the immediately preceding payment date.** |

4.03:  <u>Classes of Creditors Deemed to Have Accepted or Rejected the Plan</u>.

(a) *Deemed to Have Accepted the Plan*.  There are no classes of creditors who are not impaired.  Thus, no class of creditors is deemed to have accepted the Plan.

(b) *Deemed to Have Rejected the Plan*.  Creditors in Class 7 under the Plan will receive no distribution under the Plan.  Accordingly, Class 7 is deemed to have rejected the Plan.

### *Article 5:  Allowance and Disallowance of Claims.*

5.01:  <u>Disputed Claim</u>.  A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

(a) A proof of claim has been filed or deemed filed, and the Debtor has filed an objection or another party in interest has filed an objection;

(b) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02:  <u>Delay of distribution on a disputed claim</u>.  No distribution will be made on account of a disputed claim unless and until it is allowed.

5.03:  <u>Settlement of disputed claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Fed. R. Bankr. P. 9019.

5.04:  <u>Secured Claims Dealt With in the Plan</u>.  Any modifications to secured claims, including the valuation of property securing such claims and the avoiding of liens, do not require the filing of any motion or adversary proceeding, are deemed to be modified or avoided as set forth in this Plan, and the order confirming this Plan will modify or avoid, as the case me be, any secured claims dealt with in the Plan, as such claims are modified or avoided in this Plan.

### Article 6:  Provisions for Executory Contracts and Unexpired Leases.

6.01:  <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Debtor does not assume any leases in this Plan.

6.02:  <u>Rejection of Executory Contracts and Unexpired Leases</u>.  As to any executory contract or unexpired lease that exists prior to the Effective Date of this Plan, and notwithstanding ¶ 6.01 hereinabove, the Debtor will be deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

### Article 7:  Means for Implementation of the Plan.

7.02:  <u>Manner of Payments</u>.

(a) The Debtor will be the disbursing agent in distributing funds to allowed claims as provided under the Plan.

(b) The Debtor is authorized to use her existing debtor-in-possession bank account, or the Debtor may open a second debtor-in-possession checking account at the same institution.

(c) If the Debtor and any creditor provided for in this Plan agree to payments being made other than by check, such as electronic funds transfer, the Debtor is authorized to make payment in such form, so long as the payment is generated from the Debtor's current debtor-in-possession bank account or an account established pursuant to ¶ 7.02(b)(1) hereinabove.

7.03:  <u>Default Under Plan</u>.  Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive confirmation, an event of default as to any claim after confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not promptly cured within fourteen (14) days following delivery of written notice of that default, (ii) fails to insure the

property securing a creditor's claim for the value of the property, or (iii) disposes of property securing a claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

### *Article 8:  General Provisions.*

8.01:  <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, modified or supplemented by the defined terms herein.

8.02:  <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03:  <u>Binding Effect</u>.    The rights and obligations of any individual or entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such individual or entity.

8.04:  <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05:  <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06:  <u>Final Decree</u>.      The Debtor will file an application for a final decree and file a final report when all of the following conditions are met:

(a)  the order confirming this Plan has become final;

(b) deposits required by the Plan, if any, have been made and distributed;

(c) property proposed by the Plan to be transferred, if any, has been transferred;

(d) payments proposed by the Plan have commenced;

(e) there are no pending motions, contested matters, or adversary proceedings; and

(f) if the Plan or confirmation order requires an action or event prior to the issuance of a final decree, such action or event has occurred.

8.08: <u>Retention of Jurisdiction</u>. The Court retains jurisdiction as provided under the Bankruptcy Code, and as follows:

(a) *Generally*. The Court confirming this Plan may exercise jurisdiction to the full extent necessary to administer this case after confirmation of this Plan and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification.

(b) *Employment and Compensation of Professionals*. The Court retains jurisdiction over employment of and compensation to professionals who will be or have been employed by the Debtor during the course of this case, except to the extent that such professionals have customarily been utilized by the Debtor in her business activities prior to the Petition Date. The Debtor is authorized to hire any professionals to assist her with the business operations without being required to obtain an order from the Court to do so, and the Debtor is authorized to pay any such compensation and reimbursement of expenses directly to such professionals. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by Title 28 of the U.S. Code.

***Article 9:  Discharge.***

9.01:  <u>Confirmation Under § 1191(a)</u>.  If the Debtor's Plan is confirmed under § 1191(a),

on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation

of this Plan, to the extent specified in § 1141(d)(1)(A).

9.03.  <u>Confirmation Under § 1191(b)</u>.  If the Debtor's Plan is confirmed under § 1191(b),

confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants

a discharge on completion of all payments due within the first 5 years of this Plan.

RESPECTFULLY SUBMITTED this 26th day of December, 2024.

<u>/s/Keith L. Edmiston</u>
Keith L. Edmiston, BPR 018366
CLARK & WASHINGTON, P.C.
1321 Murfreesboro Pike, Ste. 320
Nashville, TN 37917
(615) 251-9782
(678) 990-3707 [fax]
kedmiston@cw13.com

*Attorney for the Debtor*

CERTIFICATE OF SERVICE
FILED SEPARATELY.

# EXHIBIT 1

**EXHIBIT 2 - LIQUIDATION ANALYSIS**

| Asset Description | Asset Value | Lienholder(s) | Aggregate Value of Liens | Equity | Exemption | Available for Claims in Chapter 7 |
|---|---|---|---|---|---|---|
| Real Estate 4702 Cottonwood Road Memphis, TN 39118 | 200,000 | WBL[1] | 200,000 | 0 | | 0 |
| 2016 Mercedes AMG65 | 60,000 | Mercedes-Benz Financial | 43,040 | 16,960 | 5,400 | 11,560 |
| | | | | 0 | | 0 |
| 2019 Lamborghini Urus | 175,000 | Veros Credit | 184,584 | (9,584) | | (9,584) |
| 2021 Cadillac Escalade | 65,000 | AmeriCredit Financial | 97,955 | (32,955) | | 0 |
| Furnishings and Household Items | 1,000 N/A | | 0 | 1,000 | 1,000 | 0 |
| Bank Accounts | 17,728 N/A | | 0 | 0 | | 0 |
| Cash | 200 N/A | | 0 | 0 | | 0 |
| Chapter 7 Trustee's Fee: | (750) | | | | | 0 |
| | | | | | | 0 |
| Administrative Expenses: | | | | | | |
| Counsel for Debtor | (10,000) | | | | | |
| Subchapter V Trustee | (5,000) | | | | | |
| Administrative Expenses: | (15,000) | | | | | |
| Internal Revenue Service | (41,454) | | | | | |
| Priority Claims: | (41,454) | | | | | |
| Administrative Expenses, Priority Claims, and Chapter 7 Trustee's Fees: | | | | | | (56,454) |
| Available to Pay General Unsecured Claims: | | | | | | (56,454) |
| Total - General Unsecured Claims: | | | | | | 438,197 |
| Dividend to General Unsecured Creditors in Chapter 7: | | | | | | -12.88% |

Marx-Bensdorf REALTORS | MARGARET MIKKELSEN modern memphis homes       **EXHIBIT 2**

# 4702 Cottonwood Rd
×

Memphis, TN

# $150,000

### $132,000 - $168,000

## Unlock your market insights now

You are just one step away from getting the Market Insights for your home at 4702 Cottonwood Rd.

Please press the confirm button bellow and we will shoot that right over to you.

Confirm

Your personal information is strictly confidential and will not be shared with any outside organization.

By submitting this form with your telephone number, you authorize us and our authorized representatives to contact you even if your name is on the federal "Do Not Call" list.

**PENNYMAC®**

# Home Value Estimator

See an instant estimate of your home's current value and view recent home sales in your area

**Report includes:**

- Home value estimate based on public data and other factors
- Estimated price per square foot
- Detailed description of the home
- Sale history
- Sales of comparable homes nearby



## What's My Home Worth?

Enter An Address                                                                        Terms of Use

```
Start Typing...
```

ADD UNIT/APT



☐ I'm not a robot

reCAPTCHA
Privacy - Terms

GET HOME VALUE ESTIMATE

## Your Report Is Ready

### 4702 Cottonwood Rd, Memphis, TN 38118

Estimated Home Value
**$160,157**

Price Per Square Foot
**$0/sq. ft.**

# EXHIBIT 3

For Care at Site:

**RAINBOW KIDZ CHILD CARE CENTER**
XXX-XX-0244, 0

1. Provider is in Desert County
2. Child is on 3rd Shift
3. Child is approved for disability bonus
4. Infant/Toddler bonus
5. RNS transitional bonus

## Provider Remittance

Total Eav Payment Amount:          $16,091.20
Reimbursements for Underpayments:        $0.00
Deduction for Overpayments:            -$0.00

**Total Provider Payment:**            **$16,091.20**

Sent to Edison On:            09/02/2024

Vendor Agency:
**RAINBOW KIDZ CHILDCARE CENTER**
V-36297-00

For Care at Site:

**RAINBOW KIDZ CHILD CARE CENTER**
XXX-XX-0244, 0

1. Provider is in Desert County
2. Child is on 3rd Shift
3. Child is approved for disability bonus
4. Infant/Toddler bonus
5. RIS transitional bonus

**Provider Remittance**

| | |
|---|---|
| Total Eav Payment Amount: | $16,512.89 |
| Reimbursements for Underpayments: | $0.00 |
| Deduction for Overpayments: | -$0.00 |
| **Total Provider Payment:** | **$16,512.89** |

| | |
|---|---|
| Sent to Edison On: | 09/10/2024 |

Vendor Agency:
**RAINBOW KIDZ CHILDCARE CENTER**
V-36297-00

**For Care at Site:**

RAINBOW KIDZ CHILD CARE CENTER
XXX-XX-0244, 0

Provider is in Desert County
Child is on 3rd Shift
3. Child is approved for disability bonus
4. Infant/Toddler bonus
QRIS transitional bonus

Total Eav Payment Amount:          $17,262.17
Reimbursements for Underpayments:       $0.00
Deduction for Overpayments:            -$0.00
**Total Provider Payment:**          **$17,262.17**

Sent to Edison On:          09/16/2024

**Provider Remittance**



**Vendor Agency:**

RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

IOW KIDZ CHILD CARE CENTER
X-0244, 0

Provider Remittance

Vendor Agency:
RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

ide Desert County
d iss
rd Shift
d le
owed for disability bonus
u/Th er bonus
S transitional bonus

Total Eav Payment Amount:        $17,089.83
Reimbursements for Underpayments:     $0.00
Deduction for Overpayments:        -$0.00
**Total Provider Payment:**        **$17,089.83**

Sent to Edison On:            09/23/2024

For Care at Site:
RAINBOW KIDZ CHILD CARE CENTER
XXX-XX-0244, 0

**Provider Remittance**

Total Eav Payment Amount:         $18,910.89
Reimbursements for Underpayments:      $0.00
Deduction for Overpayments:          -$0.00
**Total Provider Payment:**        **$18,910.89**

Sent to Edison On:              09/30/2024

Vendor Agency:
RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

**For Care at Site:**

**RAINBOW KIDZ CHILD CARE CENTER**
XXX-XX-0244, 0



**Vendor Agency:**

**RAINBOW KIDZ CHILDCARE CENTE**
V-36297-00

### Provider Remittance

1. Provider is in Desert County
2. Child is on 3rd Shift
3. Child is approved for disability bonus
4. Infant/Toddler bonus
5. QRIS transitional bonus (Applicable for the period 10/1/2023 to 9/30/2024)

Note: The STAR bonus will be considered for payments made until 9/30/2024, while the Quality bonus will be considered for payments made from 10/1/2024 onward.

| | |
|---|---|
| Total Eav Payment Amount: | $15,512.72 |
| Reimbursements for Underpayments: | $0.00 |
| Deduction for Overpayments: | -$0.00 |
| **Total Provider Payment:** | **$15,512.72** |
| Sent to Edison On: | 10/07/2024 |

For Care at Site:
RAINBOW KIDZ CHILD CARE CENTER
XXX-XX-0244, 0



## Provider Remittance

Total Eav Payment Amount:          $3,799.15
Reimbursements for Underpayments:       $0.00
Deduction for Overpayments:            -$0.00
**Total Provider Payment:**         **$3,799.15**

Sent to Edison On:                  10/07/2024

Vendor Agency:
RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

**For Care at Site:**
**RAINBOW KIDZ CHILD CARE CENTER**
XXX-XX-0244, 0

**Vendor Agency:**
**RAINBOW KIDZ CHILDCARE CENTER**
V-36297-00

## Provider Remittance

1. Provider is in Desert County
2. Child is on 3rd Shift
3. Child is approved for disability bonus
4. Infant/Toddler bonus
5. CRIS transitional bonus (Applicable for the period 10/1/2023 to 9/30/2024)

Note: The STAR bonus will be considered for payments made until 9/30/2024, while the Quality bonus will be considered for payments made from 10/1/2024 onward.

| | |
|---|---|
| Total Eav Payment Amount: | $19,526.86 |
| Reimbursements for Underpayments: | $0.00 |
| Deduction for Overpayments: | -$0.00 |
| **Total Provider Payment:** | **$19,526.86** |

Sent to Edison On:                    10/14/2024

For Care at Site:

RAINBOW KIDZ CHILD CARE CENTER
XXX-XX-0244, 0

## Provider Remittance

Total Eav Payment Amount:                          $19,478.70
Reimbursements for Underpayments:              $0.00
Deduction for Overpayments:                       -$0.00

**Total Provider Payment:**                        **$19,478.70**

Sent to Edison On:                                    10/21/2024

Vendor Agency:

RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

t Site:
Kidz Child Care Center
244, 0

Vendor Agency:
RAINBOW KIDZ CHILDCARE CENTER
V-36297-00

**Provider Remittance**

er Payee
o Shift
esent County
i approved for disability bonus
ode bonus
onal bonus (Applicable for the period 10/1/2023 to 9/30/2024)

e SHR bonus will be considered for payments made until 9/30/2024, while the Quality bonus will be considered for payments made from 10/1/2024 onward.

Total Eav Payment Amount:           $19,678.70
Reimbursements for Underpayments:        $0.00
Deduction for Overpayments:            -$0.00
**Total Provider Payment:**          **$19,678.70**

Sent to Edison On:              10/28/2024

12:23

**EXHIBIT 4**

< Inbox          3 Messages          ∧   ∨



Rainbow's gross approximately $80,000 monthly

Rainbow expenses :

Payroll 12000 biweekly

Phone 475

Utilities 1500

Grocery 3000

Insurance 1000



**Dwan's Expenses:**

| | |
|---|---|
| Rent | 2,000 |
| Utilities | 275 |
| Food, Household Supplies, Personal Care Items, Clothing | 2,000 |
| Newborn Items[1] | 1,000 |
| Automobile Expense (fuel, repairs, maintenance, insurance) | 600 |
| Medical and Healthcare Expenses | 1,600[2] |
| Health Insurance | 1,050 |
| Vehicle Insurance | 600 |
| Childcare | 1,900 |
| Miscellaneous Expenditures | 1,000 |

---

[1] The Debtor's son has special dietary needs due to a medical condition.  It is expected that he will continue to have special dietary needs throughout her childhood.

[2] Medical expenses include occupational therapy and speech therapy for a child that is expected to last over the life of the plan.